UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**GARY BRAME, JASON JAGER, and**
**GLEN EVANS, individually and on**
**behalf of all others similarly situated,**
   **Plaintiffs,**

  v.            Case No. 20-C-1775

**GENERAL MOTORS LLC,**
   **Defendant.**

---

## DECISION AND ORDER

Three plaintiffs, Gary Brame, Jason Jager, and Glen Evans, allege that they purchased vehicles manufactured by General Motors LLC ("GM") that consume excessive oil. They contend that this problem relates to a design defect that affects engines used in many of the vehicles GM manufactured in model years 2010 to 2014. The plaintiffs propose to represent class of all current and former owners and lessees who purchased or leased affected vehicles in Wisconsin. Before me now is GM's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## I. BACKGROUND

According to the allegations of the complaint, which I accept as true for the purpose of deciding the motion to dismiss, each plaintiff purchased a GM vehicle fitted with GM's Generation IV 5.3 Liter V8 Vortec 5300 LC9 engine. Plaintiff Brame purchased a used 2012 Chevrolet Avalanche in 2015 from a dealer in Fond du Lac, Wisconsin. Compl. ¶ 26. He has noticed that the vehicle "consumes an unusually high volume of oil." *Id.* ¶ 27. Plaintiff Jager owns a 2011 GMC Sierra that he purchased new from a dealer in

Greenfield, Wisconsin, in 2011. *Id.* ¶ 33. The vehicle consumed an unusually high volume of oil and experienced "numerous misfires, engine knock, and a rough idle." *Id.* ¶¶ 34–35. His Sierra suffered complete engine failure after being driven approximately 93,550 miles. *Id.* ¶ 35. Plaintiff Evans owns a 2011 GMC Sierra that he purchased from a dealer in Fond du Lac, Wisconsin. He noticed that his vehicle consumed an unusually high volume of oil, and eventually he took it to a mechanic who replaced the engine. *Id.* ¶¶ 42–45. Before the engine was replaced, the engine would lose a full quart of oil each week. *Id.* ¶ 45.

The plaintiffs allege that the problems they experienced with their engines were caused by a design defect they describe as the "oil consumption defect." Compl. ¶ 7. The complaint explains the mechanics of this defect in detail. In a nutshell, the plaintiffs allege that the engine's piston rings fail to keep oil in the crankcase because GM coated the rings with an inappropriate anti-friction and anti-wear material. *Id.* ¶¶ 72–81.

The plaintiffs allege that the mere existence of the oil consumption defect has caused GM to breach the express "Limited Warranty" that it made to each purchaser or lessee of one of the affected vehicles. Compl. ¶ 218. As alleged in the complaint, the Limited Warranty "expressly warranted that [GM] would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period." *Id.* The complaint further alleges that "[t]he warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period." *Id.* ¶ 219. The plaintiffs allege that the oil consumption defect is within the scope of the Limited Warranty. However, they do not allege that they ever asked GM or one of its dealers to repair the

2

defect (or any of the problems caused by the defect, such as excessive oil consumption or engine failure) during the warranty period.

The plaintiffs allege that GM knew about the oil consumption defect but failed to disclose it to them through its advertising and other statements about the quality of the vehicles. The plaintiffs allege that this failure to disclose renders GM liable for fraudulent misrepresentation. Finally, the plaintiffs allege that GM's conduct resulted in unjust enrichment.

GM has moved to dismiss the complaint for failure to state a claim upon which relief can be granted. GM contends that the plaintiffs' express warranty claims must be dismissed because the Limited Warranty does not cover the alleged defect and because the plaintiffs did not provide GM with notice of the alleged breach of warranty. GM contends that the plaintiffs' claims for fraudulent misrepresentation must be dismissed because, among other reasons, they are barred by the economic loss doctrine. Finally, GM contends that the plaintiffs' claims for unjust enrichment must be dismissed for several reasons: because an equitable claim for unjust enrichment cannot lie when the parties' relationship is governed by a contract, when the plaintiff has adequate legal remedies, or when the plaintiff has not conferred a benefit directly on the defendant.

## II. DISCUSSION

To avoid dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the

defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing a plaintiff's complaint, I assume that all factual allegations are true but disregard statements that are conclusory. *Iqbal*, 556 U.S. at 678.

## A. Breach of Express Warranty

The plaintiffs purchased their vehicles from GM dealers rather than directly from GM. However, the complaint alleges that GM made express warranties that apply to each owner of a GM vehicle and any subsequent owner. Compl. ¶ 218. The complaint alleges that the warranty is governed by Wisconsin Statute § 402.313, which is part of Wisconsin's version of Article 2 of the Uniform Commercial Code (UCC).[1] GM concedes that Wisconsin's version of the UCC controls.

GM's first argument is that its express warranty applies only to defects in "materials and workmanship," which, GM contends, excludes design defects such as the oil consumption defect. GM's second argument is that, even if the defect was within the scope of the warranty, the plaintiffs cannot succeed on a claim for breach of warranty because they do not adequately plead that they gave notice of the alleged breach, as required by Wisconsin Statute § 402.607(3)(a). I will address only the second argument because it is dispositive.[2]

---

[1] The complaint also alleges that, to the extent the warranty applies to lessees, it is governed by Article 2A of the UCC, which applies to leases. However, because the three named plaintiffs purchased rather than leased their vehicles, I focus on Article 2, which applies to sales.

[2] The plaintiffs do not contend that failure to give notice is an affirmative defense rather than an element of their claims. Further, courts have held that a plaintiff must plead and prove the giving of notice under UCC 2-607 and that the failure to do so is not merely an affirmative defense. *See e.g., Jorgensen Farms, Inc. v. Country Pride Corp., Inc.*, 824 N.W.2d 410, 418 (S.D. 2012); *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532

4

The UCC provides that "[w]here a tender has been accepted . . . [t]he buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller[3] of breach or be barred from any remedy." Wis. Stat. § 402.607(3)(a). The Wisconsin Supreme Court has stated that, under this provision, the buyer must provide reasonable notice of the alleged breach. *Paulson v. Olson Implement Co., Inc.*, 107 Wis.2d 510, 523–25 n.8 (1982). According to the court, "[t]he seller must be informed by the buyer that the buyer considers him (as opposed to others) responsible to remedy a troublesome situation." *Id.* The purpose of giving such notice is "to eliminate an element of unfair surprise where a seller has not been informed that a situation is troublesome and, therefore, cannot take steps to correct it but only later has a lawsuit filed against him." *Id.*; *see also id.* at 525–26 (quoting White and Summers for the proposition that "[t]he principal reason for requiring notice 'is to enable the seller to make adjustments or

---

F.2d 957, 970 n.31 (5th Cir. 1976) (collecting cases). Thus, although generally a court may not dismiss a complaint based on the presence of an affirmative defense, *see Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004), that rule does not prevent me from dismissing the plaintiffs' complaint for failure to provide notice of the breach.

[3] Some courts have held that a buyer does not have a duty to give notice of an alleged breach to a manufacturer on the theory that the manufacturer is not the "seller" referred to in UCC 2-607(3)(a). See *In re Santa Fe Nat'l Tobacco Co. Mktg. & Sales Practices & Prod. Liab. Litig.*, 288 F. Supp. 3d 1087, 1270 (D.N.M. 2017). However, other courts have rejected this view, *see In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 227–28 (E.D. Mich. 2020), and leading commentators on the UCC concur with the view that a "consumer buyer must timely notify a remote manufacturer of alleged defects, at least when the buyer seeks recovery under the Code for economic loss," 1 White, Summers, & Hillman, *Uniform Commercial Code*, § 12:20 (6th ed.), Westlaw (database updated Nov. 2020). In the present case, the plaintiffs do not argue that they were not required to give notice to GM because it is a manufacturer rather than a seller, and therefore I assume that notice to GM was required.

replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the seller's own liability to the buyer'").

In the present case, none of the three plaintiffs alleges that he provided notice of the alleged breach to GM. What's more, no plaintiff alleges that he ever asked GM to repair the oil consumption defect within the warranty period. As far as the complaint reveals, no plaintiff brought his vehicle to a GM dealer or to another location for obtaining warranty service and asked to have the oil consumption defect fixed. This omission from the complaint is more serious than simply failing to give notice as required by UCC 2-607. The Limited Warranty did not guarantee that the plaintiffs would never experience a defect; instead, it promised that if a defect "became apparent during the warranty period," GM would repair it free of charge. Compl. ¶ 218. If the plaintiffs never asked for a free repair during the warranty period, then GM could not have breached the warranty. *See Ball v. Sony Elec. Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *6 (W.D. Wis. 2005) (finding that plaintiffs did not allege viable claim for breach of repair warranty where they failed to allege that they brought product to defendant for repairs within the warranty period). Thus, the express-warranty claim must be dismissed for failure to plausibly allege that a breach occurred.

In any event, even if GM could have breached the warranty by failing to complete repairs that the plaintiffs never asked it to perform, the complaint would have to be dismissed for failure to give notice. The plaintiffs do not allege that they personally notified GM that they considered it "responsible to remedy a troublesome situation." *Paulson*, 107 Wis. 2d at 525 n.8. Instead, they contend that (1) they satisfied the notice requirement by filing the present lawsuit, and (2) they do not have to satisfy the notice requirement

6

because GM received notice of the oil consumption defect through a lawsuit filed by others in the United States District Court for the Northern District of California, *Sloan v. General Motors LLC*, No. 16-cv-7244. Both arguments fail.

First, courts have held that UCC 2-607 requires pre-suit notice. *Blitz v. Monsanto Company*, 317 F. Supp. 3d 1042, 1055 n.10 (W.D. Wis. 2018) (applying Wisconsin law); *Lugones v. Pete and Gerry's Organic, LLC*, 440 F.Supp.3d 226, 244–45 (S.D.N.Y. 2020); *Jorgensen Farms, Inc. v. Country Pride Corp., Inc.*, 824 N.W.2d 410, 418 (S.D. 2012). This holding makes sense, as one of the purposes of the notice requirement is to enable the seller to take corrective action and avoid litigation. The Wisconsin Supreme Court has recognized this very point, stating that the purpose of the notice requirement is to eliminate the "element of unfair surprise" that would result if a seller could be sued for breach of warranty without having received prior reasonable notice of the alleged breach. *See Paulson*, 107 Wis. 2d at 523–25 n.8. Thus, under Wisconsin law, service of a summons and complaint cannot function as the notice required by UCC 2-607.[4]

Second, the pending *Sloan* lawsuit cannot serve as the notice required by UCC 2-607. In that lawsuit, which was filed in 2016, plaintiffs from various states brought claims against GM that arose out of the oil consumption defect. One of the *Sloan* plaintiffs, Jonas Bednarek, proposed to represent a class of all current and former owners or lessees of the affected GM vehicles who purchased or leased their vehicles in Wisconsin. *See* Sloan

---

[4] The plaintiffs note that, in the *Sloan* case, the court refused to dismiss express-warranty claims under the laws of New York and Georgia on the theory that those states allow the lawsuit itself to serve as notice. *See Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 884–85 (N.D. Cal. 2018). However, even if *Sloan* correctly interpreted the laws of New York and Georgia, it is not instructive as to Wisconsin law.

7

First Am. Compl. ¶¶ 120–22, 204. On behalf of the proposed Wisconsin class, Bednarek alleged a claim for breach of GM's Limited Warranty. *Id.* ¶¶ 1736–47. However, the *Sloan* court never certified a class of Wisconsin purchasers and lessees, and eventually Bednarek voluntary dismissed his own claims and abandoned the proposed Wisconsin class. *See* Sloan ECF No. 283. Thus, the plaintiffs here (Brame, Jager, and Evans) were never parties to the *Sloan* action.

The plaintiffs contend that the complaint filed by Bednarek qualifies as pre-suit notice of their own claims. This is incorrect for two reasons. First, it is difficult to see how the filing of a prior lawsuit could be considered *pre-suit* notice. True, a prior lawsuit is necessarily filed before a subsequent one, but, as I've discussed, one purpose of the notice requirement is to provide the seller with an opportunity to avoid litigation. *See Paulson*, 107 Wis. 2d at 523–25 n.8. Allowing an earlier lawsuit to serve as notice would defeat this purpose. Second, even if a prior lawsuit could satisfy the notice requirement, the filing of a proposed class action does not qualify as notice by all members of the proposed class. Because a named plaintiff may bring a proposed class action without consulting the proposed unnamed class members, the filing of the proposed class action does no more than inform the seller that the named plaintiff considers the seller to have breached the warranty and thinks others might agree with him. It does not inform the seller that each proposed unnamed class member actually considers his or her vehicle defective and in need of warranty service. Unless GM knows which purchasers actually consider their vehicles defective, GM is not afforded an opportunity to address their concerns before they commence their own suits.

The plaintiffs here attempt to avoid the second problem by asserting that they "ratified" the notice that Bednarek supposedly provided to GM in *Sloan*. *See* Br. in Opp. at 8. However, the claimed act of ratification is the filing of the *present* lawsuit. *Id.* at 8–9 ("Plaintiffs intentional ratification of the notice provided through the *Sloan* case is clear from the fact that they retained the same lawyers in the *Sloan* case and re-asserted the Wisconsin warranty claims that were previously alleged in the *Sloan* case."). So the plaintiffs' ratification argument is no different than their argument that service of the summons and complaint in this action satisfied the notice requirement. In other words, the plaintiffs concede that, until they filed the present lawsuit, GM did not have notice that they (as opposed to Bednarek) considered their vehicles defective and expected GM to repair them under the Limited Warranty. Thus, the plaintiffs cannot use the concept of ratification to get around the fact that they did not provide GM with pre-suit notice of their own claims.

Finally, the plaintiffs contend that they were not required to give pre-suit notice because doing so would have been futile. They believe that giving notice would have been futile because "GM has known of its alleged breaches of warranty for years, through the *Sloan* Action, but it has failed to do anything to address [the] issue." Br. in Opp. at 9. This argument fails for two reasons. First, the plaintiffs were not parties to the *Sloan* action, and I cannot infer from GM's response to the *Sloan* complaint that had the plaintiffs asked GM to repair their vehicles under the Limited Warranty, it would have refused to do so. As I discussed above, Bednarek's having filed a purported class action on behalf of all Wisconsin purchasers was not equivalent to individualized notice from each proposed unnamed class member. Thus, from the mere fact that GM did not contact the current

9

three plaintiffs and offer to repair their vehicles after being served with the complaint in *Sloan*, I cannot infer that had the plaintiffs brought their vehicles in for warranty service or otherwise notified GM that they considered their vehicles defective, GM would have refused to offer a solution.

Second, Wisconsin courts require a buyer to give the seller notice of an alleged breach even if the seller would not have cured the breach after receiving such notice. *See Wilson v. Tuxen*, 312 Wis. 2d 705, 732–33 (Ct. App. 2008). The purpose of giving notice "goes beyond simply triggering any right to cure" and includes opening a path to settlement talks and giving the seller an opportunity to protect him or herself. *Id.* at 732. In the present case, had the plaintiffs provided pre-suit notice to GM, GM would have had opportunities to repair the plaintiffs' vehicles, offer them settlements, or take steps to limit the plaintiffs' losses and its own exposure. Whether GM would have availed itself of those opportunities—or whether a solution would have been reached—is, according to the Wisconsin Court of Appeals, "beside the point." *Id.* at 733. Wisconsin Statute § 402.607(3)(a) "does not contain an exception to the notice requirement when the seller is not prejudiced" by the lack of notice. *Id.*

In sum, because the plaintiffs have not alleged that they asked GM to repair their vehicles during the warranty period, they have not alleged that GM breached the Limited Warranty by failing to fix a defect. Thus, their claims for breach of express warranty must be dismissed. Further, even if the plaintiffs had alleged a breach, their claims would have to be dismissed for failure to give pre-suit notice of the alleged breach.

10

## B.     Fraudulent Misrepresentation

The plaintiffs allege that GM made fraudulent misrepresentations by failing to disclose in its advertisements and other statements about the quality of its vehicles that the engines of the affected vehicles would consume excessive amounts of oil. The plaintiffs thus seek to hold GM liable for common-law fraud, which is a tort. *See Tietsworth v. Harley-Davidson, Inc.*, 270 Wis .2d 146, 156 (2004). GM contends that such claims must be dismissed because they are barred by the economic loss doctrine.[5]

The economic loss doctrine is a judicially created remedies principle that operates generally to preclude contracting parties from pursuing tort recovery for purely economic or commercial losses associated with the contract relationship. *Tietsworth*, 270 Wis. 2d at 162. The doctrine "precludes recovery in tort for economic losses resulting from the failure of a product to live up to a contracting party's expectations." *Id.* The doctrine generally requires transacting parties to pursue only their contractual remedies when asserting an economic loss claim. *Id.* at 163. "Economic loss" for purposes of the doctrine "includes the diminution in the value of the product because it is inferior and does not work for the general purposes for which it was manufactured and sold." *Id.* It includes both direct economic loss and consequential economic loss and has been extended to consumer transactions. *Id.* Ultimately, "[t]he economic loss doctrine is 'based on an understanding that contract law and the law of warranty, in particular, is better suited than

---

[5] GM advances other arguments for dismissing the plaintiffs' fraud claims, but because I conclude that those claims are barred by the economic loss doctrine, I will not discuss the other arguments.

11

tort law for dealing with purely economic loss in the commercial arena.'" *Id.* (quoting *Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis. 2d 395, 403–04 (1998)).

The economic loss doctrine applies to common-law fraud claims alleging that the seller[6] of a product made misrepresentations pertaining to "the character and quality of the goods that are the subject matter of the contract." *Id.* at 167. In the present case, the plaintiffs allege that GM made various statements touting the quality of the vehicles and their engines but did not disclose that the engines consumed excessive amounts of oil. *See* Compl. ¶¶ 167–88. These statements and omissions related to the character and quality of the GM vehicles and their engines. Further, the plaintiffs seek to recover the economic losses they suffered because of the omissions. *Id.* ¶ 88 (alleging that, as a result of GM's omissions, plaintiffs purchased vehicles "that were of diminished value" and experienced "costly problems"). Thus, the plaintiffs' claims for fraudulent misrepresentation are barred by the economic loss doctrine.

The plaintiffs contend that their fraud claims are not barred because they fall within an exception to the economic loss doctrine relating to fraud in the inducement. This is a "narrow" exception to the doctrine that applies only when the plaintiff demonstrates three elements: (1) the defendant engaged in an intentional misrepresentation; (2) the misrepresentation occurred before the contract was formed; and (3) the alleged misrepresentation was extraneous to the contract. *Hinrichs v. DOW Chem. Co.*, 389

---

[6] Because the plaintiffs purchased their vehicles from dealers rather than from GM, GM was not the direct seller of the vehicles. However, the plaintiffs do not argue that this fact allows them to avoid the economic loss doctrine. Moreover, the Wisconsin Supreme Court has held that the doctrine bars tort claims brought by remote commercial purchasers against a manufacturer. *See Daanen & Janssen*, 216 Wis. 2d at 400, 403.

Wis. 2d 669, 688–89 (2020). For a misrepresentation to be extraneous to the contract, it must concern matters whose risk and responsibility do not relate to the quality or the characteristics of the goods for which the parties contracted or otherwise involve performance of the contract. *Id.* at 689.

Here, the fraud in the inducement exception cannot apply because the alleged fraud relates to "the quality and characteristics of the product in question and is thus not extraneous to the contract." *Id.* at 690. As discussed, the plaintiffs allege that GM engaged in fraud by touting the quality of the vehicles and their engines without disclosing that the engines consume excessive amounts of oil. The alleged fraud is thus related to the quality and characteristics of the product and not extraneous to the contract. Accordingly, the fraud in the inducement exception does not save the plaintiffs' claims for fraudulent misrepresentation.

**C.    Unjust Enrichment**

The plaintiffs' remaining claims are for unjust enrichment. Under Wisconsin law, unjust enrichment is an equitable doctrine that is "grounded on the moral principle that one who has received a benefit has a duty to make restitution where retaining such a benefit would be unjust." *Watts v. Watts*, 137 Wis. 2d 506, 530 (1987). An unjust enrichment claim requires: "(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof." *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 477 (7th Cir. 2009) (footnote omitted) (quoting *Seegers v. Sprague*, 70 Wis. 2d 997, 1004, (1975)).

The plaintiffs allege that they conferred a benefit on GM when they purchased their vehicles from independent dealers and that, because their vehicles are defective, GM has been unjustly enriched. GM moves to dismiss this claim on three grounds: (1) a claim for unjust enrichment cannot coexist with a claim for breach of express warranty; (2) a claim for unjust enrichment cannot succeed when the plaintiff has adequate legal remedies; and (3) because the plaintiffs allege that they purchased their vehicles from dealers rather than from GM, they have not alleged that they conferred a benefit on GM . While I agree that the unjust-enrichment claim must be dismissed, I do so on a ground that is slightly different than (but closely related to) those argued by GM.

The basic problem is that, to the extent the plaintiffs conferred a benefit on GM by purchasing GM vehicles from independent dealers, the plaintiffs received something of value in return, namely, the vehicles GM manufactured. Unjust enrichment, however, "involves getting something for nothing, not providing a product for a price." *Weaver v. Champion Petfoods USA Inc.*, No. 18-CV-1996-JPS, 2019 WL 2774139, at *6 (E.D. Wis. 2019) (quoting *Associated Banc-Corp v. John H. Harland Co.*, No. 06-C-1097, 2007 WL 128337, at *2 (E.D. Wis. Jan. 11, 2007)). A classic example of unjust enrichment is where the plaintiff mistakenly makes improvements to the defendant's property. Under such circumstances, justice may require the defendant to pay the plaintiff for the benefit conferred, even though the defendant did not hire the plaintiff to make the improvements. *Cf. Puttkammer v. Minth*, 83 Wis. 2d 686, 266 N.W.2d 361 (1978). Here, however, the plaintiffs received something in return for the benefits they supposedly conferred on GM: the vehicles that GM manufactured. Of course, the plaintiffs allege that the vehicles did not meet their expectations. But the sales of the vehicles were subject to whatever terms

and conditions the plaintiffs agreed to at the time of sale or that were supplied by Article 2 of the Uniform Commercial Code. If the vehicles did not meet expectations, the plaintiffs were entitled to pursue their contract remedies against their dealers (or against GM if an express warranty existed). Thus, even if the vehicles did not meet expectations, the plaintiffs received something in exchange for the benefit they conferred—the vehicles plus the legal remedies available to them against either the dealer or GM (or both). It is not unjust to limit disappointed product purchasers to their legal remedies. *See Weaver*, 2019 WL 2774139, at *6 (recognizing that product purchaser did not unjustly enrich manufacturer by paying for product that was of lower quality than expected); *see also Smith v. RecordQuest, LLC*, 989 F.3d 513, 520 (7th Cir. 2021) (holding that claim for unjust enrichment must be dismissed when plaintiff has adequate remedies at law).

Accordingly, the plaintiffs' claims for unjust enrichment will be dismissed.

**D.   Leave to Amend**

Ordinarily, when a district court dismisses a complaint for failure to state a claim upon which relief can be granted, the court should grant the plaintiff leave to amend. *See, e.g., O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 346–47 (7th Cir. 2018). However, when it is certain from the face of the complaint that any amendment would be futile, the court does not have to grant such leave. *Id.* at 347.

In the present case, the plaintiffs did not, in their brief in opposition to the motion to dismiss, request an opportunity to amend if I found the current complaint deficient. Moreover, I cannot envision an amendment that could save the plaintiffs' claims. The plaintiffs cannot plead around the economic loss doctrine, and therefore an amendment

could not save their claims for fraudulent misrepresentation. Further, no amendment could save the plaintiffs' claims for unjust enrichment.

It is conceivable that the plaintiffs could plead that, before they commenced this suit, they each asked GM to repair the oil consumption defect within the warranty period and that, when GM failed to do so, they notified GM that they considered its failure to be a breach. However, if the plaintiffs could have made these allegations consistently with Federal Rule of Civil Procedure 11, they likely would already have done so or have offered, in their brief in opposition to the motion to dismiss, to amend their complaint to include the allegations. For this reason, I conclude that it would be futile to grant the plaintiffs leave to amend for the purpose of pleading facts showing that, before filing this suit, each plaintiff personally notified GM that he considered his vehicle defective and considered GM's failure to repair the defect to amount to a breach of the Limited Warranty. Accordingly, I will dismiss this action with prejudice.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that GM's motion to dismiss the complaint is **GRANTED** and that this action is **DISMISSED WITH PREJUDICE**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 23rd day of April, 2021.

<u>s/Lynn Adelman</u>
LYNN ADELMAN
United States District Judge